I'll bill your argument next in Case 11-801, Peter v. NantKwest. Mr. Stewart. Thank you, Mr. Chief Justice, and may it please the Court. An unsuccessful patent applicant may seek judicial review through either a direct appeal to the Federal Circuit under 35 U.S.C. 141 or a district court suit under Section 145. Section 145 states that an applicant who files suit under that provision must pay all the expenses of the proceeding. The question presented here is whether those expenses include money that the PTO spends to employ lawyers and paralegals who assist with the agency's defense of the suit. For three principal reasons, the answer to that question is yes. First, the term expenses unambiguously encompasses costs that encompasses money paid to employees or other personnel to accomplish a particular task. And unlike the term costs, which has a similarly broad common meaning, this Court has not construed the term expenses as a legal term of art with a more limited scope. Second, requiring patent applicants who file suit under Section 145 to pay personnel expenses of the PTO is consistent with the overall statutory scheme. Congress has directed the PTO to charge fees that are sufficient to cover its aggregate operating costs, including personnel expenses. And the PTO has developed fee schedules that, in a rough and ready way, require applicants who cause the agency to incur greater expenses to pay more in the way of fees. And Section 145 applicants put the PTO to a particular expenses, and it's therefore consistent with the logic of the statute to require them to pay more. And third, it's especially appropriate to require Section 145 plaintiffs to pay the PTO's personnel expenses, because Section 141 is available as an alternative means of obtaining judicial review. Section 141 is not a cut rate or substandard mode of judicial review. It's ordinary, on-the-record, APA-style judicial review, and it contains no requirement that the applicant who chooses that course must pay the PTO's personnel expenses. And so it's just as simple as that. Ginsburg. Mr. Stewart, is there any other Federal statute that provides for attorney's fees on the basis of the word expenses alone? As you know, there are expenses and attorney's fees, expenses including attorney's fees. But what other statute provides for attorney's fees simply on the basis of the word expenses? Stewart. We're not aware of any, unless you include the trademark analog to this provision, and presumably the government's position on those two statutes will rise or fall together. We're frankly not aware of any other Federal statute that uses the term expenses standing alone. That is, as Your Honor's question suggests, when Congress has provided for shifting of expenses, it typically makes clear that it intends to provide for payment of attorney's fees in the course of doing that. But sometimes it says expenses including attorney's fees, sometimes expenses and attorney's fees. How about to the losing party? Are there other statutes that provide for fees, attorney's fees, that are awarded against the prevailing party? I mean, the only one we're aware of, there are two categories of those. There are Sebelius v. Klor, the Vaccine Act, and that was an unusual situation. There are also statutes that provide discretion to award attorney's fees without specifying that the person who receives the fees must obtain some degree of litigation success. And in that context, the Court has construed those discretionary provisions as requiring a degree of litigation of success. But I'd say a couple of things about that aspect. And called it a radical departure to do otherwise. Well, it would be in the context of ordinary fee-shifting provisions. And I think this is an important point, that if you ask, is it unusual, is it a departure from the norm either to require an adverse litigant to pay the government's personnel expenses or to require the prevailing party to pay? The answer is, if you compare it to other adversarial litigation involving the government, yes, it is unusual. If you compare it to other stages of the patent application process, it's not unusual at all. And so the PTO charges particular fees for application and examination. Those fees, the PTO doesn't try to fine-tune the process. It's determined that it would be administratively overly cumbersome to say to each applicant, you must pay in precise proportion to the work that you make the PTO do. But in a sort of rough-and-ready way, it's tried to create a scenario in which applicants who cause the PTO to pay to incur greater expenses must pay more. So if your proposed patent has an unusually large number of claims, you may have to pay a larger fee. If you seek continued examination or if you file an administrative appeal to the PTAB, you have to pay additional fees. And none of that is contingent on how the application is ultimately disposed of. And so if your application is turned down by the examiner and you file an appeal to the Patent Trial and Appeal Board, the PTAB, and the examiner miss the boat completely, you are entitled to your patent. You get a favorable disposition, but you still have to pay the appeal fee to the PTAB for the PTAB proceeding. Counsel, your interpretation of expenses includes attorney's fees, you argue, in this case. Is there anything that would inhibit the government from suggesting that other forms of overhead might also be allocated to litigants? The electorate bill, the sewage bill, other things that are required in order to be able to litigate these cases. Well, the statute refers to expenses of the proceeding. And so we would have to show the requisite connection to the particular case. Well, you have a lawyer here, right, who works for the government anyway. It's not like you went out and hired a lawyer. So you're allocating some personnel expenses to this proceeding. What would prohibit the government from allocating other expenses to this proceeding? Well, it's certainly true that for some bookkeeping purposes, when we talk about personnel expenses, we will include what I think is referred to as a fully burdened rate. We're talking not just about the salary, but to some additional increments of money that are, that go along with hiring. So nothing, in other words, right, a fully burdened rate would include this other form of overhead that we're talking about. I guess the point I would make is we do that in the application process already. Oh, okay. So you're already doing this. We're doing that in the application process in the sense that we are under a congressional mandate to collect fees that, in the aggregate, are sufficient to cover — Well, that's helpful to know that you're already doing this. And it's been 170 years. Is that right? That's right. How did the government just figure this out? Well, I think we don't have a good explanation for why we weren't doing it before. We do have explanation, good explanations for why we focused on this matter at the time that we did. But you would say that in all the years that you weren't doing it, you were violating the statute because the statute is mandatory. I wouldn't say that we were violating the statute. That is, this is somewhat analogous to what the Court often refers to as a mandatory claim processing rule as opposed to a jurisdictional requirement. So, for instance, statutes of limitations are often phrased in terms of no suit shall be filed more than three years after the violation occurs. But everybody understands that even though the statute is phrased in mandatory terms, the defendant can waive or forfeit the limitations defense by failing to raise it at the appropriate moment. And nobody would say that the defendant violates the statute by failing to assert a limitations defense that it could have asserted. So I think we would have to say that for that 170-year period, we were foregoing a source of income that we were entitled to get. You started by saying that the statutory term expenses unambiguously covers attorney's fees. So two questions on that. First, the cases seem to suggest that there's something of a clear statement rule in this area that has to explicitly, expressly cover fees. And two, all of the statutes that seem to satisfy that refer to attorney's fees or fees and not the term expenses. So which part of that do you disagree with? Well, the Court has made clear that even though a relatively clear indication of congressional intent is necessary, there's no magic words requirement. And the point I was making about expenses being unambiguous is that there is no ordinary plain language understanding of the word expenses that doesn't encompass the money that you use to hire a person to accomplish a particular task. And sometimes in situations like this where Congress has used expansive general language, the Court has said the failure to specify particular items doesn't indicate ambiguity, it indicates breadth, that Congress could have ‑‑ I think that would be true if there weren't some kind of clear statement backdrop to this. But my question is, you agree there is something of a clear statement requirement. Is that correct? That's correct. Okay. And then ‑‑ May I interrupt for a second? Go ahead. Does that mean you're dropping your argument in your initial brief that the American rule doesn't apply to this kind of case? Because in your reply brief, you don't make any mention of that. And here, in responding to Justice Kavanaugh's questions and in your first two minutes, you also don't make that argument again. Have you effectively dropped that argument so we're now within the American rule presumption? We would certainly acknowledge that if this sentence didn't appear in Section 145 at all, we would not be able to recoup personnel expenses. Now, the Fourth Circuit held that because the Section 145 mandate applies without regard to the ultimate outcome of the litigation, the American rule doesn't apply. And we think the Fourth Circuit was right at least to the requirement. But the specific mandate that the expenses be paid regardless of the outcome of the proceedings is a good indication that this provision is trying to accomplish something very different from what an ordinary fee shifting provision is intended to accomplish. And so you can conclude on that basis the American rule doesn't apply, or you can conclude this is one of the contextual factors that leads you to the conclusion that personnel expenses are encompassed. Are you going to send the Respondent a bill for your time today? We are not. And I think that's — there are really three different potential obstacles to our claiming an incremental share of my salary. The first is that the PTO has, even in the most recent years, has sought only expenses of PTO personnel, not of Department of Justice lawyers who have assisted in the representation of Section 145 suits. And I think that's based on the idea this is a provision that is intended to help in making the PTO a self-financing agency. It complements the requirement that the PTO collect fees to cover its own operating expenses, not that of other agencies. There's a separate question also about whether an appellate stage of the case would fall within the term proceedings in Section 145. And it's noteworthy in this regard that Section 141, which provides for direct appeal to the Federal Circuit, doesn't include an expense recoupment mandate. And I think you could infer from that fact that Congress intended only the trial stage of the Section 145 proceedings, the thing that was distinctive to a Section 145 suit, to be subject to this mandate. And the third thing is, even in the trial — with respect to the trial court proceedings in this case, the PTO didn't seek recoupment of expenses for attorney time spent arguing about the fees. It requested recoupment of expenses only for the attorney time that was devoted to the issue of patentability. And the only issue before this Court, obviously, is recoupment of fees, not the original dispute. Ginsburg. I can see the argument, Mr. Stewart, that the word expenses could include attorney's fees. But I don't understand the argument that expenses alone must include attorney's fees. I think the argument is simply, as a matter of plain language, no one would doubt that the money paid — excuse me — the money paid to PTO personnel in the course of the suit were part of the expenses that the PTO incurred. And the only question is whether the term expenses, like the term costs, has acquired a status as a legal term of art that has a legal meaning narrower than its common meaning. And the Court has never used the term in that way. Indeed, in elucidating the term costs, the Court has sometimes said, as in Taniguchi, costs has an ordinary meaning that's synonymous with expenses, but for purposes of Federal cost-shifting statute, it has a more narrow meaning. The other thing I'd say about costs is that when the Court says that the word costs is a term of art, it has a limited meaning, the Court has a source of law to look to to see whether particular items are or are not costs. It looks to 28 U.S.C. 1821 and 28 U.S.C. 1920. And so when the Court says we are going to depart from the ordinary meaning of costs, it doesn't have to make things up. It has a source of law to determine whether a particular — Breyer. All right. So I don't want to cut you off there. Stewart. Whereas here, I think Nanquist has really given no guidance as to what it thinks the term expenses means other than it doesn't include attorneys' fees. But we can't fault Nanquist for that because there really is no alternative source for determining what the term expenses means, if not its ordinary meaning. Breyer. How should I deal with this fact, as far as I can tell? If you go back to 1830s when this was enacted, the patent litigants paid the costs, including the attorneys' fees, of the patent office, didn't they? So you could say, well, this was just where there are special costs here. This group should pay it, not everybody. That made sense. But then in the 1860s, the government decides to pay for all these expenses. Now it doesn't make much sense anymore to have this group pay. Then in 1990, it goes back to the first system. All right. So if it were just the one system or the other, I could make a lot of sense out of it, either saying these have special costs, the patent putting a special burden on this, and it has to be clear before you break the American rule. But we have some of one and some of the other. So should I use that to put weight on the fact nobody's ever thought of this before? Well, as I say, I think this was an argument that could have been made for an extended period of time, and we don't have a good explanation for it. I don't know if it could have been made between 1865 and 1990. During that time, it was the cost. Well, there was still the objective of making the PTO a self-funded agency, an agency whose receipts were equivalent to its expenses. It already is. It already is. You're paying from the fees, meaning the time you're attributing to the attorneys and the paralegals is already being paid. Without these fees, the patent application fee itself is covering it. You haven't had a shortfall. Well, the PTO is under a congressional mandate to ensure that its aggregate receipts match up with its aggregate expenditures. No. But is that true between 1865 and 1990? No, no. No, it wasn't. And therefore, I'm having a big — oddly enough, that's sort of what's giving me a problem here because — in the long delay, because I couldn't have said what you want me to say for well over a hundred years. Well, the mandate to pay the — I think it was the whole of the expenses of the proceeding under the original statute. The mandate was there all along, and it was part of Congress's objective that the PTO be self-financing. Now, for a prolonged period of time, the way that Congress went about that was that, for the most part, Congress was determining the amount of the fees for particular services, and it was trying to set fees at a level that would, as closely as possible, match up with PTO expenses. Often there was a shortfall and an appropriation would be needed to fill the gap. In 2011, Congress essentially made it the PTO's responsibility to balance the books. It put the PTO under a mandate to make sure that your aggregate receipts equal your aggregate expenditures. And once that responsibility was placed upon the agency, the agency felt a greater duty to look for other sources of — I looked in 1930, for example. I'll discover that even in 1930, Congress was trying to get the patent fees to match the patent expenses. They just didn't always do it right. It was certainly trying as much as possible. Okay. How do I — where do I look for that? I'm not sure whether you would look to that. But even in the 1830 Act — 36 Act, the statute said that fees that are paid into the Treasury, fees for patent application services, will be placed in a fund to be known as a patent — as the patent fund to be used for the salaries of the officers and clerks and other expenses of the agency. And — Mr. Stewart, do you dispute the Federal Circuit's estimate that if this cost of the PTO attorneys is spread among all patent applicants, even the ones who don't use 145, that the added cost per applicant would be $1.60? We don't. And I think that the — we don't dispute that. And I think the PTO's motivation here is really more one of equity than of financial necessity. That is, it is certainly true that the number of Section 145 suits is small enough that if the applicant was not required to pay PTO personnel expenses, those could be allocated among all the hundreds of thousands of patent applicants, and none of them would — all of them would pay a very small amount. I think the PTO's motivation really is — in this case, for example, we saw about $111,000 in combined personnel expenses and expert witness fees. It was a little under $80,000 for the lawyers and paralegals, a little over $30,000 for the expert witnesses. And the PTO tells me that the fee, application and examination fee, for the typical patent application is about $3,300. So here we're dealing with a situation in which the Section 145 suit caused us to incur about 30 times the expenses that would ordinarily attend — that would ordinarily be the fees for a patent application and examination. And it's one thing for the PTO to say, we're not going to fine-tune this absolutely. We're going to accept the idea that some applicants will pay a little bit more, some applicants will pay a little bit less than their fair share of our operating expenses. But when we have this congressional mandate and when we have a situation where by filing suit under Section 145, you've caused the PTO to incur 30 times the expenses that go with a typical patent examination, it seems fair and appropriate to make the applicant pay. And again, part of our fairness argument is that Section 141 is available. It provides exactly the same type of judicial review that is ordinarily the only mode of judicial review that's available to somebody who's aggrieved by federal agency action. And so the applicant who — who doesn't believe — either doesn't want to pay the expenses or doesn't believe that its chances of success will be enhanced by filing suit in district court is — the 145 — 141 mechanism is available. I think you've covered this, but just to confirm, however we rule in this case will cover — will affect only two statutory provisions? That's correct. It will certainly affect the trademark statute and, you know, basically our pitch in the certiorari petition was even though they are technically different statutes, our position would stand or fall together. We're not aware of any other statute that uses the term expenses standing alone in this context. And then in terms of your overall purpose argument, Congress wanted it to be a self-sustaining agency, but what sense does it make to think that Congress wanted the winning party to turn around and pay the government's legal fees, given how unusual that is? Why would Congress have thought to do it that way is, I guess, what I'm asking. I guess the two reasons are, since the very beginning and the first iteration of the statute enacted in 1839 specifically said whether the decision is in its favor or not, and the trademark statute continues to include that language. And even if you interpreted the term expenses very restrictively as limited to costs under 1821 and 1920, it is no more usual to require the winning party to pay the other party's costs than for the winning party to have to pay the losing party's attorney's fees. And so interpreting the — Except the costs are obviously a far smaller amount. That's correct, but — It's unusual, but not to the degree — It doesn't have the same practical effects. But again, the point I would make, and I think this is in a sense our primary point, is you should — the Court has described a Section 145 suit as a continuation of the examination process, and there is language in the statute to that effect. It says that the applicant shall pay all the expenses of the proceeding rather than the plaintiff. And so the applicant continues to retain that status throughout the lawsuit. It says that the Court can adjudge that the applicant is entitled to a patent. And so when you look to see is this unusual or not, you should compare it not just to other adversarial litigation involving the government. You should compare it to other stages of the patent application process. And as I've said, at every other stage, your obligation to pay fees depends in part on how much work you're making the PTO do, but it doesn't depend at all on the ultimate outcome of the process. And so if you file a successful PTAB appeal and persuade the PTAB that the examiner got it wrong, you still have to pay the fees for the PTAB appeal, even though, in a sense, you could say that's requiring the winning party to pay. If I may, I'll reserve the balance of my time. Certainly. Mr. Chu? Mr. Chief Justice, and may it please the Court, there are three important considerations. First, the American rule is a bedrock principle, and this Court has recognized and applied that rule for two centuries. Second, the government is arguing for a radical departure from the American rule. It is arguing that when a private party sues the government for its improper action, then that private party must pay for the government's attorneys, even if the government and its attorneys are flatly wrong. Third, and this responds to some of the questions from the justices that were put to the government, today there are 3,274 Federal statutory provisions that use the word expenses without any reference to attorneys' fees or counsel fees. Some of those provisions are open and end it, as is the case here. The government can point to not a one of those other provisions to say that the word expenses includes attorneys' fees, save for the two exceptions, radical exceptions, it is arguing here. And I would invite questions from the Court. Why isn't this just like a filing fee? In other words, the applicant can take the normal appeal to the Court of Appeals, but if he or she wants to go through the much more elaborate proceeding of trying the case, bringing in new evidence, they have to pay a filing fee. I mean, in some agencies, I don't remember from long ago, the filing fee for a particular proceeding before the ICC was $100,000, because they figured most of the people were going to be doing this, it's going to be corporations that can afford it, and we're, you know, they're putting us out to a significant extent. Why? I guess, I mean, would it be problematic in your case if they said, okay, you can go to district court, but if you're going to do this unusual proceeding, you know, if you have three claims, that's going to be $15,000. If you have six, it's going to be $30,000. But in other words, it's a significant filing fee for the very purpose of doing what the statute seems to contemplate. First, this is not a filing fee. It's a claim for attorney's fees against a strong backdrop of the American rule. Second, this is not inside the patent office. This is adversarial litigation. This is where a private party says the government made a mistake, and I, private party, I am going to sue the government in the United States District Court. And once it's adversarial litigation, there can be no doubt that the American rule applies with its full force and effect over the last two centuries. Ginsburg. Is there any language short of saying explicitly attorney's fees that would overcome the American rule? We've told there's no magic words, but what short of saying including attorney's fees or an attorney's fees would do? The answer to the question is no, that either the words attorney's fees, counsel fees, reasonable compensation for services of a lawyer for a bankrupt estate, which was true in the Baker-Botz case, there would be words that would be specific and explicit to refer to Justice Kavanaugh's point where Baker-Botz, the American rule, was the American rule. And thus, this Court made clear that to have an exception because of a statute under the American rule, it must be specific and explicit. And well before that, in the Alyeska case, a decision by this Court was to the same effect, as well as other decisions. Well, I presume that if the Congress wrote a provision that said the pro rata share of all the services of its personnel, that would be enough, because you wouldn't exclude lawyers from that. If Congress had a specific provision that showed it was intending to include lawyers, Congress has the authority to enact such legislation. But as in your exact example, I would say there would still be an ambiguity because of the American rule. And let me give you an example from history. Three years before the enactment of what we now call Section 145, there was a statute enacted by Congress with respect to the expenses of the patent office. It was an appropriations statute. And Congress said, we have five new positions. We have the commissioner of patents. We have a chief examining clerk. We have another examining clerk. And we have two other clerks. And Congress said, we need to pay for their salaries, and said, these are expenses of the office. Note, three years later, when Section 145 was first enacted, the language was different in several respects. The language is, all the expenses of the proceeding, as distinct from expenses of the patent office, which it was addressing three years earlier. But, Mr. Chu, are you saying that expenses of the office is not enough to get you lawyers' fees? Suppose it was just expenses of the patent office, which would presumably give you the expenses, you know, the costs of personnel. Does that not include lawyers? Yes. I am saying, under this backdrop of the American rule, this Court has made clear Congress needs to enact a statute that is specific and explicit. It basically has to say lawyers? Or words to that effect, yes. Well, what does words to that effect mean? Counsel. Compensation for legal counsel, for advice, whatever. In other words … Fees? The word fees alone? I do not believe the word fees alone would cover it, because fees can refer to many, many other things. Docket fees, marshal fees, filing fees, fees of other personnel perhaps, but not attorney's fees. If there is an ambiguity under the American rule, this Court has repeatedly made clear it must be, quote, specific and explicit. What expenses, in your view, does Section 145 impose on the person who invokes that proceeding? Travel expenses? Lodging expenses? Parking expenses? Expenses with respect to court reporters? Printing expenses? Marshal fees? Docket fees? Court interpreters? That's not an exhaustive list, but it does not include attorney's fees. I'm sorry. Experts. I do not think it should include expert witness fees, whether they are internal experts or external experts, but I want to note for the Court, in this particular instance, for practical reasons, Nanquist did not challenge the government's request for expert witness fees, and they were paid. So then you put your finger on, yes, the American rule, yes, yes, yes, but we have a special kind of case, and Congress was saying it seemed, and says again, look, present all your evidence to the Patent Office, and if you don't like the result, go to the Federal Circuit. You want a second bite? You forget what happened to the American rule? You forgot to bring in somebody, or you didn't, and then they'll have to bring in people, and before you know it, you have, that's the big expense here, experts. And sure enough, you're saying, no, don't cover those. Not very discouraging, if they wanted to discourage you from using 145. I mean, did it carve out a separate special thing here? Do we just use the American rule? Yes. I know what you're going to say. That's a trouble, and I'm the one who's puzzled by it. If I look puzzled, I would like to withdraw my puzzled look. You don't look puzzled. I'm the one who's puzzled. But I will say that in every case where a party wanted attorney's fees under a statute, this Court has always applied the American rule. Either the general rule, each party bears their own attorney's fees, or the part of the American rule that says if there's a specific and explicit statutory exception, that can apply. And the government points to no exception. The government points to no case decided by this Court involving a claim for fees under a statute. Where it says the American rule did not apply. In which ways? I'm sorry. As you just said, in the typical American rule case, the rule is each party to the case bears its own expenses. But that's not the situation here, is it? It's a question of whether you pay or other people who are not involved in this litigation at all pay. And maybe it's only going to be $1.60, but still other people are paying those expenses. Doesn't that make that different from the American rule? I would state the rule differently than Your Honor. The American rule doesn't apply to expenses generally. The American rule applies to a claim for attorney's fees, period. Well, let me ask something that's related. Maybe it's the same thing. Just as a matter of fairness, why should these other people pay for the costs that you have caused the Patent Office to incur? If we were Congress, and we're not, Congress could decide whether it thinks it's fair or wise or good public policy. But as this Court has said, in Alyeska and Baker and so on, it is up to Congress to decide whether it thinks it's fair or not. Could you tell me what the difference is between expenses and costs? We have a whole statutory system of costs. Yes. I believe some of the items that you mentioned earlier as being expenses are not covered under the traditional sense. Give me a definition of expenses. Yes. As you understand it. Yes. Let me do this in two parts. First, in 1839, what did expenses mean? The Bouvier Legal Dictionary defined expense vitae, which literally means expenses of litigation. And it actually defined those expenses to be the costs that could be awarded to the prevailing party. To the same effect are two other legal definitions from legal dictionaries, both before and after 1839. And in fact, one of those was the first Black's Law Dictionary, which was in 1891. Now, the second part of the answer is today. The meaning of costs has taken on a term of art in Federal litigation. And there are certain things that are considered to be costs and other things not to be costs, but overall, I think any litigator today in Federal court would say the word expenses floating by itself alone is probably a broader term than costs. Breyer. Is this you might have looked up, and it might help me actually and help you or not. But did you find any, in any area, where an agency, say, has proceeded along Path 1 for 150 years and then suddenly changes its mind and says now we're going to go on Path 2, and the court either said, oh, well, that makes no difference whatsoever, or the court said, no, it's too late now, we take into account the way you've carried this out? We found no case, no case, no instance where an agency has done anything like that even for considerably shorter periods of time. Oh, did you find some in a shorter period of time? And the court said, we're going to follow your habit. We're not going to follow going into a deep, deep, difficult statutory analysis with an old statute. It's good enough for you. It's good enough for us. Anything like that? Not for any period of time. I can give you an example, but it's a relatively short period of time. This Court decided the Adams-Fruit case. The Labor Department was dealing with a statute passed by Congress that gave workers under certain circumstances a private right of suit. And the Labor Department said, aha, we have the ability to interpret that statute, and we should get deference. And it interpreted the statute to mean that the workers couldn't sue in Federal court, they had to go through State law procedures. And the question that came up to this Court, it was a Chevron question. Should this Court defer to the agency's interpretation of the statute? And this Court said, no. This is a judicial matter. This isn't a matter of an agency having its own discretion. So, too, here. This is district court litigation where the parties are adversaries. The proceeding in the patent office is quite different from that. The American rule has always applied in Federal court litigation. I'd like to point out to pick up on Justice Breyer's question. If you have a situation where there's a statute, and it's pretty evident, and certain parties, here it would be the PTO, for some period of time do not advance an interpretation of the statute that would benefit them, and a period of time passes, should we adopt a rule that that's strong evidence of what the statute means, that it doesn't mean the thing that the interpretation that would have benefited these parties that failed to take advantage of it? I would say yes in the following sense. The beginning part of statutory interpretation is always plain and ordinary meaning of the language on the date of enactment. There can be other factors. But the over 170 years involve scores, maybe hundreds of senior patent office officials. Not one of them thought that the plain and ordinary meaning of expenses in Section 145 or its predecessors included attorney's fees. So that should be considered by this Court. Now, I wanted to point out. Just in ordinary English, though, expenses would encompass attorney's fees, wouldn't it? That's Mr. Stewart's point to the contrary. It might or might not, but it would ignore the American rule for 200 years, ignore the consistent case law of this Court, always applying the American rule, including applying the American rule when, in the National Childhood Vaccine Injury Act, the unsuccessful petitioner under that Act of Congress could be awarded attorney's fees. Although this Court didn't use the words American rule, the government's reply brief, I believe at page 18, I would say, takes a position in the reply brief different from earlier positions and says, in effect, this Court was applying the American rule. Breyer. You probably, I'm just looking at your resume here, have experience in this patent area. Is that true? Stewart. Yes. Breyer. Okay. In your experience where you're settling out of court or you're trying to work out a system without going into court for resolving a claimant who says this is infringing my patent or there are all kinds of people claiming it, you set up private systems, and the private systems, whether it's arbitration, mediation, thousands of different systems, involve costs. Is it fairly common, not fairly common, unheard of, or what, to say in the contract that's doing this for the whole thing or maybe the opposite? What's it like? Stewart. I can think of no instance by my personal experience or through reading or otherwise where a contract would say you bring this up and you pay for the whole thing no matter what, including attorney's fees. But there certainly are agreements that are silent on attorney's fees in recognition of the American rule or that expressly say attorney's fees may be shifted under certain circumstances or expressly say not at all. I would say what's interesting here is that Congress in 1952 first enacted what we now know is Section 285 of the Patent Act, and that provides for an award of, quote, attorney's fees, using those words, that may be awarded in exceptional cases. And at the same time, in the 1952 Act, Congress amended Section 145. It used to be called R.S. 4915. It got codified as 145. The prior 145 has the exact same language that the current 145 has, but it added a clause where the entire statute at the time was all the expenses of the proceeding shall be paid by the applicant, comma, whether he shall prevail or not, prevail or otherwise, or words to that effect. So Congress, in adding this attorney's fees provision for Section 285 where they used the word attorney's fees, took out that last clause. So it wasn't just carelessness, we're not worrying about the rest of the Patent Act. They were focused and focused in particular on 145. I want to point out also that the government argued that there's no other statute that would be affected. We respectfully disagree. The word expenses, standing alone, without a reference to attorney's fees, in an open-ended fashion, appears elsewhere. Let me give you an example. 19 U.S.C. 1608. 19 U.S.C. 1608. It relates to customs forfeitures. So a party saying customs department, you shouldn't have caused my property to be forfeited, I want it back, must pay, quote, all, the word all appears, all the costs and expenses, end quote. It's pretty closely analogous to the statute here. No party, no one, not the government or anyone else, not an academician has ever raised the question about all the expenses in that statute includes attorney's fees. Let me give you another example. This is 19 U.S.C. 6337. The IRS can levy on a taxpayer's property if the taxes weren't paid. So the private taxpayer says, I want my property back. And the statute provides taxpayer, you get your property back if you pay the expenses and the unpaid tax. I suppose the difference there is, and maybe there is, but I gather in those situations there weren't alternative proceedings that you could go through? I do not know before the statutes whether there were or were not alternative proceedings. My main point is, in those two examples, one that refers to all expenses and the other that refers to expenses, they are open-ended. You know, I don't want to preempt him, but I suspect Mr. Stewart will say don't worry about those because those are different. Here, you know, the applicant has two different routes, and if he wants to take the route that imposes more costs on the government, then he should be expected to pay for it. Well, that is their argument, but that is rewriting the statute that Congress actually enacted in 1839 because it may sound sensible to the government today. In 1839, you're going to a lot of work here, but in 1839, say 1840 to 1865, they did have a fund where the patentees paid all the expenses, et cetera, and then they had this, too, for the 145 equivalent, the 145. During that period of time, that period of time, did the government ever try to collect attorneys' fees as part of the expenses? No. No. I thank the Court very much. Thank you, counsel. Mr. Stewart, you have six minutes remaining. Thank you, Mr. Chief Justice. I mean, there were various questions concerning the legal significance of the PTO's and formerly the Patent Office's failure to take this position over an extended period of time, and there's no question this is an atmospherically unhelpful point for us, but I don't think that it fits in any established doctrinal category. That is, there are cases in which the Court has said when you have a body of court of appeals precedent that adopts a particular interpretation of a particular term and then Congress reenacts the provision without changing that term, then Congress can be supposed to have acquiesced in or ratified the prior judicial interpretation. We don't have anything like that here. We don't have a body of lower court case law saying that the term expenses doesn't include personnel expenses. But you do have an interpretation through action by the agency itself over the period of 190 years or something. I mean, you could say at the most that a view that these expenses were not recoverable is implicit in what the PTO has done or not done. Even with respect to the PTO, it's not as though the agency ever promulgated a regulation or issued some similarly formal statement to the effect that we think expenses means the following things and it doesn't include personnel. Sotomayor But we do have a doctrine, the American Rule, that says unless a clear statement of attorney's fees is encompassed, we won't impose them. So for 170 years, the PTO didn't think of expenses including attorney's fees. Very consistent with the American Rule. Stewart The two things I would say are it might be that part of the PTO's motivation we don't know, but it's a reasonable speculation, is that the PTO didn't seek these expenses in part because it wondered whether the term was sufficiently clear to overcome the American Rule. But on close examination, we think that it is. That is, Nanquist has offered various examples of things that it would be covered things that it thinks wouldn't be covered, but it hasn't propounded a test. It hasn't pointed the court to a dictionary that would include some things and not the others. Breyer What about your thoughts? I don't. This is slightly frivolous. But, I mean, we say we finally figured out what Justinian meant by this particular thing a thousand years ago. You see the... Stewart I see the point, but, you know, the court... Roberts Could you share it with the rest of us? The court has said in cases like United States v. Fausto that the implications of existing statutory provisions may be clarified by newly enacted provisions, and the PTO has examined this matter afresh in light of the totality of the statutory scheme. And the last thing I would want to say, and it's in part a continuation of the point I was making earlier about the Section 145 suit being in a very meaningful sense, in a legal sense, a continuation of the examination process. Up to this point, Congress has directed the PTO to ensure that its aggregate intake equals its aggregate expenses. It hasn't directed the PTO to fine-tune the process to ensure that each patent applicant pays his or her fair share. But suppose it did. Suppose Congress said each applicant shall pay all the expenses of the application and examination process. If the argument was made that shouldn't include a pro rata share of the salary of the PTO examiner who worked on the case, the court would say that's crazy. How could the PTO possibly effectuate its congressional mandate to collect aggregate expenses in a way that equals costs if it didn't collect the single greatest expense that it incurs when a PTO examiner does his or her work? And similarly, an appeal to the board. If each patent applicant was required to pay all the expenses of the board proceeding, of course that would include an increment of money that was attributable to the time spent on the case by the board judges, even though those judges are lawyers. No one would think that the American rule required some clearer statement than that, that Congress intended the person who invoked that process to pay the extra expenses that the PTO incurs by virtue of that process. Similarly, the examiners on the patent side are typically not lawyers. Trademark examiners are lawyers. And the work that they do in examination is therefore lawyers' work. But nobody imagines that the American rule has anything to do with the PTO's ability to make sure that people who invoke the examination services pay their fair share of the PTO's overall expenses. I think this goes back to a question that you got at the very beginning. But setting attorney's fees aside, could you tell us, Mr. Stewart, exactly what expenses you charge for and exactly what expenses you don't? I mean, sometimes we have charged for travel expenses. We didn't in this case. I don't believe we charged for printing costs, although I think we could have. With respect to personnel expenses specifically, we would charge for the lawyers. We would charge for the paralegals. In this case, we had an outside expert who was kind of paid money out of the agency's funds, and we did charge for that. There are other circumstances in which, rather than retain an outside expert, we get expertise from within the agency. So it could be the patent examiner who worked on the case, or it could be somebody else, and we would charge a pro rata share of that person's time. Thank you, counsel. The case is submitted.